UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW R. OGILVIE, | No. 12-CV-001654-DMR |
| Plaintiff, | **ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT** |
| v. | |
| SELECT PORTFOLIO SERVICING, FKA FAIRBANKS CAPITAL CORPORATION, et al., | |
| Defendants. | |

Defendants Select Portfolio Servicing, FKA Fairbanks Capital Corporation ("Select Portfolio"), U.S. Bank National Association ("U.S. Bank"), as trustee on behalf of the holders of the Credit Suisse First Boston Mortgage Securities Corporation Home Equity Pass Through Certificates, Series 2006-8 ("the Trust"), National Default Servicing Corporation ("National Default"), and Mortgage Electronic Registration Systems, Inc. ("MERS") (collectively, "Defendants") filed a motion to dismiss Plaintiff Andrew R. Ogilvie's second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The court conducted a hearing on October 11, 2012. For the reasons below, Defendants' motion is granted, and Plaintiff's second amended complaint is dismissed with prejudice.

**I. Background**

On July 13, 2006, Plaintiff recorded a Deed of Trust in the Contra Costa County Recorder's Office against 891 Marin Road, El Sobrante, CA 94803 ("the Property") to secure an Adjustable Rate Note in the amount of $288,750.00 in favor of Ownit Mortgage Solutions, Inc. (2d Am. Compl. ¶ 15; Req. for Judicial Notice in Supp. of Defs.' Notice of Mot. to Dismiss Pl.'s 2d Am. Compl.[1] ("RJN"), Ex. 1.) The Deed of Trust names Stewart Title of California as Trustee and MERS as "Nominee" for Lenders. (2d Am. Compl. ¶ 15; RJN, Ex. 1.) Ownit Mortgage Solutions, Inc. securitized the Deed of Trust, and sold it to the Trust, with U.S. Bank as the Trustee and Select Portfolio as the loan servicer. (2d Am. Compl. ¶ 16.)

On April 3, 2009, a Corporate Assignment of Deed of Trust ("Corporate Assignment") was recorded purporting to transfer the beneficial interest of the Deed of Trust from MERS to U.S. Bank. (2d Am. Compl. ¶ 18; RJN, Ex. 2.) Bill Koch signed the document as Assistant Secretary of MERS. (2d Am. Compl. ¶ 18; RJN, Ex. 2.) However, Koch is listed as an Assistant Secretary of Select Portfolio in the document's Notary Public acknowledgment. (2d Am. Compl. ¶ 18; RJN, Ex. 2.) On the same day, a recorded Substitution of Trustee indicates that U.S. Bank made a substitution of Trustee under the Deed of Trust in favor of National Default. (2d Am. Compl. ¶ 19; RJN, Ex. 3.) Olivia A. Todd signed the document as President of Select Portfolio, servicing agent for U.S. Bank, but Plaintiff alleges that Todd is President of National Default. (2d Am. Compl. ¶¶ 19, 29; RJN, Ex. 3.)

Select Portfolio later recorded a Notice of Default and Election to Sell Under Deed of Trust. (2d Am. Compl. ¶ 17; RJN, Ex. 4.) On January 24, 2011, National Default recorded a Notice of Trustee's Sale. (2d Am. Compl. ¶ 20; RJN, Ex. 5.) On January 9, 2012, National Default recorded a Trustee's Deed Upon Sale to convey the Property to U.S. Bank. (2d Am. Compl. ¶ 21; RJN, Ex. 6.)

---

[1] The court grants Defendants' request for judicial notice of Exhibits 1 through 6, foreclosure-related documents recorded in the Contra Costa County Recorder's Office. They are true and correct copies of official public records and their authenticity is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. *See* Fed. R. Evid. 201(b). Plaintiff objected to the request for judicial notice, arguing that the court may not take judicial notice of the disputed factual matters stated therein. The court notes that it has relied on the documents for their existence, rather than the truth of the matters stated therein.

Plaintiff filed his complaint in state court on March 1, 2012. Defendants removed the action on April 3, 2012. Plaintiff filed his first amended complaint on April 17, 2012, alleging causes of action for slander of title and wrongful foreclosure. On July 23, 2012, the court dismissed Plaintiff's first amended complaint with leave to amend. [Docket No. 28.] On August 9, 2012, Plaintiff filed his second amended complaint, alleging five causes of action: 1) slander of title; 2) violation of California Civil Code section 2923.5; 3) wrongful foreclosure; 4) violation of California Business and Professions Code section 17200 *et seq.*; and 5) common count for money had and received. Defendants move to dismiss the second amended complaint in its entirety.

## II. Discussion

### A. Legal Standard

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

"[A] court may take judicial notice of 'matters of public record,'" *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (citing *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)), and may also consider "documents whose contents are alleged in a complaint and whose

3

authenticity no party questions, but which are not physically attached to the pleading" without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). The court need not accept as true allegations that contradict facts which may be judicially noticed. *See Mullis v. United States Bankruptcy Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987).

### B. Analysis

#### 1. Slander of Title

"The recordation of an instrument facially valid but without underlying merit will give rise to an action for slander of title." *Stamas v. Cnty. of Madera*, 795 F. Supp. 2d 1047, 1068 (E.D. Cal. 2011) (citing *Seeley v. Seymour*, 190 Cal. App. 3d 844, 857 (1987)). In California, the Plaintiff must establish: "(1) a publication, (2) which is without privilege or justification, (3) which is false, and (4) which causes direct and immediate pecuniary loss." *Lykkeberg v. Bank of Am., N.A.*, No. C-12-00772-JW, 2012 WL 1099773, at *6 (N.D. Cal. Apr. 2, 2012) (citing *Manhattan Loft, LLC v. Mercury Liquors, Inc.*, 173 Cal. App. 4th 1040, 1051 (2009)).

##### a. Publication and Falsity

Plaintiff sufficiently pleads the elements of publication and falsity. The publication element is satisfied because the foreclosure documents in question are matters of public record. (2d Am. Compl. ¶¶ 15-21; RJN, Exs. 1-6.) As to falsity, Plaintiff alleges that the recorded documents are false because the Corporate Assignment and the Substitution of Trustee, which purport to transfer the beneficial interests of the Deed of Trust, do not legally transfer those interests. Plaintiff's falsity allegation appears to rely on three theories, only one of which Plaintiff adequately pleads.

Plaintiff first alleges, as he did in his first amended complaint, that the Corporate Assignment is false because MERS did not have the authority to transfer the beneficial interest. (2d Am. Compl. ¶¶ 23-26.) The court has already rejected this theory. (Order Granting Mot. to Dismiss 4-5.) Under California law, "MERS, as nominal beneficiary, has the power to assign its interest under a deed of trust." *Herrera v. Fed. Nat'l Mortg. Ass'n*, 205 Cal. App. 4th 1495, 1498 (2012). *Herrera* looked

to the language in a Deed of Trust, which gave express authorization to MERS to take certain actions as nominee for the Lender:

> The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to the Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property . . .
>
> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and cancelling this Security Instrument.

*Id*. at 1499. The court determined that "[p]laintiffs granted MERS [the authority to assign the note] by signing the deed of trust." *Id*. at 1498-99, 1503-06; *see Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal. App. 4th 256, 270-73 (2011); *Gomes v. Countrywide Home Loans, Inc.*, 192 Cal. App. 4th 1149, 1157-58 (2011) (citing *Pantoja v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 1177, 1189-90 (N.D. Cal. 2009)). The language of the Deed of Trust in the instant case is identical to the Deed of Trust analyzed in *Herrera*. (*See* RJN, Ex. 1 at 2-3.) Thus, Plaintiff's allegation that MERS lacked authority to assign the interest in the Deed of Trust fails under *Herrera*.

Plaintiff's second theory appears to be that the foreclosing parties lack an interest in the property due to the "unrecorded securitization and sale to the securitized trust . . . on or before the closing date of the trust of December 1, 2006." (Pl.'s Opp'n 5.) This theory appears to be based on allegations about the Trust's Pooling and Service Agreement ("PSA"). Plaintiff alleges that the Trust closed in 2006, and alleges that pursuant to the terms of the PSA, the Trust could not accept any new assets after that date. However, the Corporate Assignment, which purported to transfer the beneficial interest of Plaintiff's Deed of Trust from MERS to U.S. Bank, was not recorded until April 2009. Accordingly, by accepting Plaintiff's Deed of Trust as an asset, the Trust thus violated the terms of its PSA. (2d Am. Compl. ¶¶ 35-39.) Plaintiff alleges that the consequence of the violation of the PSA is that the Deed of Trust is not an asset of the Trust. (2d Am. Compl. ¶ 37.)

1  However, this theory fails.  To the extent that any of Plaintiff's claims are based on the theory that
2  Defendants allegedly failed to comply with the terms of the PSA, the court finds that he lacks
3  standing to do so because he is neither a party to, nor a third party beneficiary of, that agreement.
4  *See In re Correia*, 452 B.R. 319, 324 (B.A.P. 1st Cir. 2011) (holding debtors, as neither parties to
5  nor third party beneficiaries of a PSA, lack standing to challenge mortgage assignment based on
6  non-compliance with agreement); *see also Junger v. Bank of Am.*, No. 11-10419 CAS (VBKx), 2012
7  WL 603262, at *3 (C.D. Cal. Feb. 24, 2012) (not reported in F. Supp. 2d) ("The Court finds that
8  plaintiff lacks standing to challenge the process by which his mortgage was (or was not) securitized
9  because he is not a party to the PSA."); *Tilley v. Ampro Mortg.*, No. 11-1134 KJM CKD, 2012 WL
10 33033, at *4 (E.D. Cal. Jan. 6, 2012) (holding plaintiff lacked standing to assert securitization of her
11 loan violated terms of PSA, to which she was not a party); *Bascos v. Fed. Home Loan Mortg. Corp.*,
12 No. 11-3968-JFW (JCx), 2011 WL 3157063, at *6 (C.D. Cal. July 22, 2011) (not reported in F.
13 Supp. 2d) ("To the extent Plaintiff challenges the securitization of his loan because Freddie Mac
14 failed to comply with the terms of its securitization agreement, Plaintiff has no standing to challenge
15 the validity of the securitization of the loan as he is not an investor of the loan trust."); *cf. Lucia v.*
16 *Wells Fargo Bank, N.A.*, 798 F. Supp. 2d 1059, 1070-71 (N.D. Cal. 2011) (finding borrowers, who
17 were neither parties to nor intended third party beneficiaries of Servicer Participation Agreement
18 between Wells Fargo and Fannie Mae, lack standing to assert a breach of contract claim.)

19          Plaintiff's third theory is that the Corporate Assignment and the Substitution of Trustee are
20 false because both documents are signed by individuals who are not who they represent themselves
21 to be, and thus did not have the authority to make the assignment or the substitution of trustee, which
22 presumably invalidates the eventual foreclosure sale.  The complaint alleges that Mr. Koch signed as
23 Assistant Secretary of MERS, when he is actually Assistant Secretary of Select Portfolio.  (2d Am.
24 Compl. ¶ 27.)  Similarly, Plaintiff alleges that Ms. Todd signed as President of Select Portfolio,
25 when she is actually President of National Default.  (2d Am. Compl. ¶ 29.)  Although the court need
26 not accept as true allegations that contradict facts which may be judicially noticed, *see Mullis*, 828
27 F.2d at 1388, Defendants have not offered any judicially-noticeable facts which contradict Plaintiff's
28 allegations about Mr. Koch and Ms. Todd.  As the court must accept these allegations as true for

purposes of this motion, the court concludes that Plaintiff has sufficiently pled the falsity element of his slander of title claim.

### b. Privilege

The court concludes Plaintiff has adequately pled that the publication was without privilege or justification. California Civil Code section 47(c)(1) states: "[a] privileged publication or broadcast is one made: (c) [i]n a communication, without malice, to a person interested therein, (1) by one who is also interested." Cal. Civ. Code § 47(c)(1). Nonjudicial foreclosure documents are subject to this privilege. *See* Cal. Civ. Code § 2924(d); *Dubose v. Suntrust Mortg., Inc.*, No. 11-CV-03264-EJD, 2012 WL 1376983, at *3 (N.D. Cal. Apr. 19, 2012) (dismissing slander of title claim because notice of default, notice of trustee sale, and substitution of trustee are subject to privilege); *Lykkeberg*, 2012 WL 1099773, at *6 (dismissing slander of title claim because transfer of deed is subject to privilege); *Ramirez v. Right-Away Mortg. Inc.*, No. C-11-01839-WHA, 2011 WL 3515931, at *3 (N.D. Cal. Aug. 11, 2011) (not reported in F. Supp. 2d) (dismissing slander of title claim because notice of default is subject to privilege).

An exemption to the section 47 privilege arises upon an allegation of malice. *Permito v. Wells Fargo Bank, N.A.*, No. C-12-00545-YGR, 2012 WL 1380322, at *8 (N.D. Cal. Apr. 20, 2012) (citing *Kachlon v. Markowitz*, 168 Cal. App. 4th 316 (2008)) ("Absent factual allegations of malice, a trustee's performance of the statutory procedures in a nonjudicial foreclosure is subject to the qualified, common-interest privilege of California Civil Code § 47(c)(1).")). Malice requires "that the publication was motivated by hatred or ill will towards the plaintiff *or* by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights." *Kachlon*, 168 Cal. App. 4th at 336 (quoting *Sanborn v. Chronicle Pub. Co.*, 18 Cal. 3d 406, 413 (1976)) (emphasis in original) (quotation marks omitted). Here, Plaintiff alleges that Defendants acted with malice when they formulated false documents with knowledge of their falsity. (2d Am. Compl. ¶¶ 32-34, 40, 41.) These allegations are sufficient, if true, to overcome the privilege, as Plaintiff is only required to show Defendants "lacked reasonable grounds for belief in the truth" to establish malice. *See Smith v. Quality Loan Serv. Corp.*, No. Civ.

S-11-2108 KJM-EFB, 2012 WL 202055, at *4 (Jan. 23, 2012) (quoting *Kachlon*, 168 Cal. App. 4th at 336).

### c.     Pecuniary Harm

In dismissing Plaintiff's slander of title claim, the court granted Plaintiff leave to amend the claim to plead that Defendants caused direct and immediate pecuniary harm. (Order Granting Mot. to Dismiss 6.) However, Plaintiff again fails to sufficiently plead this element.

"The gravamen of the tort [slander of title] is the damage to the salability of the property." *Seeley*, 190 Cal. App. 3d at 858. Pecuniary loss for slander of title is restricted to "(a) the pecuniary loss that results directly and immediately from the effect of the conduct of third persons, including impairment of vendibility or value caused by disparagement, and (b) the expense of measures reasonably necessary to counteract the publication, including litigation to remove the doubt cast upon vendibility or value by disparagement." *Ryan v. Editions Ltd. W., Inc.*, No. C-06-4812-PVT, 2007 WL 4577867, at *12 (N.D. Cal. Dec. 27, 2007) (not reported in F. Supp. 2d) (citing *Appel v. Burman*, 159 Cal. App. 3d 1209, 1215 (1984) (quoting Rest.3d Torts § 633)).

Plaintiff alleges that the property's vendibility was impaired (2d Am. Compl. ¶ 31) and that he "was prejudiced by the slander of title because he lost his home, his equity in the subject property, suffered pecuniary harm, and was forced to engage the assistance of counsel to defend this wrongful foreclosure" (2d Am. Compl. ¶ 48). First, Plaintiff's assertion that the Property's vendibility was impaired is wholly conclusory; Plaintiff does not allege any facts to show how the allegedly slanderous recorded documents diminished *the value of the Property itself*. Miller & Starr California Real Estate 3d § 11:48 (citing *Gudger v. Manton*, 21 Cal.2d 537, 553-55 (1943) (overruled on other grounds in *Albertson v. Raboff*, 46 Cal.2d 375, 381 (1956)) (financial loss resulting from impairment of marketability of property measured by the diminution in the value of the property caused by the slanderous publication). Second, Plaintiff alleges that attorneys' fees and costs incurred in the current action constitute pecuniary harm. (2d Am. Compl. ¶ 48.) However, "in an action for slander of title fees incurred to quiet title are recoverable and fees incurred prosecuting the slander of title are not." *Ryan,* 2007 WL 4577867, at *13 n.13. Because the alleged monetary loss is limited to attorneys' fees and costs for pursuing this action, the allegations fail to establish

pecuniary harm as a matter of law. As Plaintiff has already been granted leave once before to amend this claim but still failed to sufficiently allege all of the elements of this claim, the slander of title claim is dismissed with prejudice.

### 2.     California Civil Code section 2923.5

Plaintiff's second claim is for violation of California Civil Code section 2923.5, which sets forth borrower contact requirements in connection with the filing of a notice of default. However, the trustee's sale of the property has already occurred. The "*only* remedy provided is a postponement of the sale before it happens." *Mabry v. Superior Court*, 185 Cal. App. 4th 208, 235 (2010) (emphasis in original). Plaintiff does not address this claim in his opposition to Defendants' motion to dismiss and appears to have abandoned it. Accordingly, this claim is dismissed with prejudice.

### 3.     Wrongful Foreclosure

In *Lona v. Citibank, N.A.*, the court set forth the elements of an equitable cause of action for wrongful foreclosure:

> (1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering.

202 Cal. App. 4th 89, 104 (2011).

#### a.     Illegal Sale

Plaintiff alleges several grounds for demonstrating an illegal, fraudulent, or willfully oppressive sale, two of which he pleads adequately.

First, Plaintiff alleges that the foreclosure is oppressive and wrongful because U.S. Bank was not the true beneficiary at the time of the Trustee's Sale and could not legally be granted the Property as foreclosing beneficiary. (2d Am. Compl. ¶ 59.) Plaintiff asserts that the Corporate Assignment did not convey the beneficial interest to U.S. Bank for two reasons: (1) because MERS could not convey the beneficial interest; and (2) because Mr. Koch improperly signed the Corporate Assignment as Assistant Secretary of MERS, when he is actually Assistant Secretary of Select Portfolio. (2d Am. Compl. ¶¶ 24-27.) While Plaintiff's MERS allegations fail as a matter of law

9

because, as discussed above, MERS is authorized under the Deed of Trust to assign a beneficial interest to U.S. Bank, Plaintiff's false signatory allegation, taken as true, is sufficient to plead the element of illegal sale in support of a claim for wrongful foreclosure.

Second, Plaintiff alleges that the foreclosure is invalid because National Default is not the true Trustee and, therefore, did not have the power to legally convey the Property as Trustee in the Trustee's Deed Upon Sale. (2d Am. Compl. ¶ 29, 30.) Plaintiff asserts that National Default is not the true Trustee because Ms. Todd improperly signed the Substitution of Trustee as President of Select Portfolio, when she is actually President of National Default. (2d Am. Compl. ¶ 29.) These allegations, taken as true, are sufficient to plead the element of illegal sale.

Plaintiff next argues that the foreclosure was oppressive and wrongful because Select Portfolio, servicing agent for U.S. Bank, signed the Notice of Default as the beneficiary when it was not the beneficiary. (2d Am. Comp. ¶¶ 56, 57.) Plaintiff does not mention this theory in his opposition to the motion to dismiss, but it appears to be an extension of his position that U.S. Bank was not the proper beneficiary. To the extent this theory is based upon his allegation that the Corporate Assignment is false because MERS did not have the authority to transfer the beneficial interest, the court has already rejected this theory. To the extent this theory is based upon Plaintiff's allegations that Defendants violated the terms of the PSA, so that the Deed of Trust is not an asset of the Trust and U.S. Bank is not the proper beneficiary, the court has rejected this theory as well.

Plaintiff makes two final arguments in support of his allegation that the foreclosure was oppressive and wrongful, both of which fail. He argues that there were no valid assignments of the Deed of Trust due to "fabricated and invalid documents and the separation of Plaintiff's note and deed of trust upon securitization," alleging this violated the PSA. (2d Am. Compl. ¶ 64.) As noted above, claims based upon allegations that Defendants violated the PSA fail. Finally, he argues that the foreclosure was oppressive and wrongful because Defendants violated California Civil Code section 2923.5. (2d Am. Compl. ¶ 65.) As set forth above, Plaintiff appears to have abandoned his claim that Defendants violated that section, and moreover, Plaintiff has cited no authority for, let alone facts supporting, the proposition that a violation of section 2923.5 may serve as the basis for a claim that a foreclosure was illegal, fraudulent, or willfully oppressive.

### b. Prejudice or Harm

The next element of a wrongful foreclosure claim is prejudice or harm, which Plaintiff has not adequately pled. Plaintiff alleges that he was prejudiced and harmed because he lost his home, lost the equity in his home, suffered pecuniary harm, and was forced to engage counsel for this matter. (2d Am. Compl. ¶ 61.) However, as the court noted in dismissing Plaintiff's first amended complaint, prejudice or harm is not established unless the plaintiff demonstrates "that the foreclosure would have been averted but for [the] alleged deficiencies." *Reynoso v. Paul Fin., LLC*, No. 09-3225-SC, 2009 WL 3833298, at *4 (N.D. Cal. Nov. 16, 2009) (not reported in F. Supp. 2d); *see also Ghuman v. Wells Fargo Bank, N.A.*, No. 1:12-CV-00902-AWI-BAM, 2012 WL 2263276, at *5 (E.D. Cal. Jun. 15, 2012) ("Plaintiffs would be hard pressed to show any conceivable prejudice, given Plaintiffs have offered no facts to suggest the substitution of NDEx (or the allegedly improper recording thereof) adversely affected their ability to pay their debt or cure their default."). Here, Plaintiff has not alleged that the foreclosure would not have occurred but for the supposed improper transfer of interest. *See Permito*, 2012 WL 1380322, at *6 ("for a foreclosure to be 'wrongful,' Plaintiff also must allege that no entity had the right to foreclose upon her, not simply that the wrong entity foreclosed upon her.") Plaintiff does not dispute that he defaulted on the loan, and that it was his default that led to the institution of foreclosure proceedings.

The court put Plaintiff on notice that the allegations regarding prejudice in his first amended complaint were insufficient and gave Plaintiff the opportunity to amend his claim to properly allege this element. (*See* Order Granting Mot. to Dismiss 8.) His second amended complaint contains no additional allegations that support the prejudice element of the wrongful foreclosure claim. Given Plaintiff's inability to allege that the foreclosure would not have occurred but for the alleged improper transfer of interest, the court concludes further amendment would be futile. Accordingly, Plaintiff's wrongful foreclosure claim is dismissed with prejudice.[2]

### 4. Unfair Competition Law

---

[2] As the court dismisses Plaintiff's wrongful foreclosure claim with prejudice, it does not reach the parties' arguments regarding application of the tender rule, but notes that in its July 23, 2012 Order, the court declined to apply the rule at the early pleading stage. (Order Granting Mot. to Dismiss 9.)

11

1    Plaintiff's fourth cause of action seeks relief for Defendants' alleged violations of California
2 Business & Professions Code section 17200 *et seq.* ("Unfair Competition Law," or "UCL").  To
3 allege a viable UCL claim, Plaintiffs must meet the elements required to establish that claim.  Under
4 Section 17200, unfair competition is defined as "any unlawful, unfair or fraudulent business act or
5 practice" and "unfair, deceptive, untrue or misleading advertising." *See* Cal. Bus. & Prof. Code §
6 17200.  A business practice is "unlawful" under section 17200 if it violates an underlying state or
7 federal statute or common law.  *See Cal-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20
8 Cal. 4th 163, 180 (1999).  An act is "unfair" if the act "threatens an incipient violation of a
9 [competition law], or violates the policy or spirit of one of those laws because its effects are
10 comparable to or the same as a violation of the law." *Id*. at 187.  To the extent the claims sound in
11 fraud, they are subject to the heightened pleading standards of Rule 9(b).  *See Kearns v. Ford Motor
12 Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).  Additionally, "[a] plaintiff alleging unfair business
13 practices under the unfair competition statutes 'must state with reasonable particularity the facts
14 supporting the statutory elements of the violation.'"  *Silicon Knights, Inc. v. Crystal Dynamics, Inc*.,
15 983 F. Supp. 1303, 1316 (N.D. Cal. 1997) (quoting *Khoury v. Maly's of California*, 14 Cal. App. 4th
16 612, 619 (1993)).

17    Here, Plaintiff has failed to state "with reasonable particularity" the facts supporting this
18 claim.  Plaintiff simply lists a number of general allegations about Defendants' activities with
19 respect to mortgage loan servicing and foreclosure.  (2d Am. Compl. ¶ 68.)  Yet Plaintiff has not
20 stated facts supporting an actual or incipient violation of any underlying statutes to support a UCL
21 claim.  In his opposition to the present motion, Plaintiff concedes that his UCL cause of action is
22 wholly derivative, and that his "ability to pursue this cause of action depends on the success or
23 failure of [his] substantive causes of action."  (Pl.'s Opp'n 13.)  Accordingly, as Plaintiff's slander of
24 title, wrongful foreclosure, and section 2923.5 claims fail, his UCL claim based upon those causes of
25 action fails as well.  The UCL claim is dismissed with prejudice.

### 5. Common Count for Money Had and Received

27    A cause of action for money had and received is stated if it is alleged the defendant "is
28 indebted to the plaintiff in a certain sum 'for money had and received by the defendant for the use of

the plaintiff.'" *Schultz v. Harney*, 27 Cal. App. 4th 1611, 1623 (1994). "The only essential allegations of a common count are (1) the statement of indebtedness in a certain sum, (2) the consideration, i.e., goods sold, work done, etc., and (3) nonpayment." *Farmers Ins. Exchange v. Zerin*, 53 Cal. App. 4th 445, 460 (1997) (quotations and citation omitted).

Plaintiff, in his fifth cause of action, alleges that Defendants received funds arising out of his obligations under the Note for the purchase of the property. Plaintiff alleges that the funds "were not used [for Plaintiff's benefit] and applied to her [sic] obligations under the Note" and Defendants have not given the money to Plaintiff "or otherwise settled Plaintiff's claims in this matter." (2d Am. Compl. ¶ 79.) Plaintiff has failed to allege a statement of indebtedness in a certain sum, and moreover, has failed to allege any facts that would entitle him to recover money from Defendants. At the hearing on this motion, Plaintiff's counsel conceded that Plaintiff, who borrowed money from Defendants, could not allege Defendants' indebtedness to him. Accordingly, this claim is dismissed with prejudice.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's second amended complaint is GRANTED and Plaintiff's second amended complaint is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

Dated: October 12, 2012



_____
DONNA M. RYU
United States Magistrate Judge

13